## LEGGETT, Appellant, v. LOUISIANA PURCHASE EXPOSITION COMPANY, Respondent.

### St. Louis Court of Appeals, November 27, 1906.

**LANDLORD AND TENANT: Tenancy at Will: Acceptance of Surrender.** A tenant at the expiration of his term continued to hold over while negotiations were pending for a renewal, and the tenant, at the end of two months from the end of the term left the key to the premises at the office of the landlord's agent, which key was retained by the agent, and afterwards furniture was stored in the premises, but who owned the furniture and whether it was stored there with the consent of the landlord, were disputed facts. It was a question for the jury as to whether there was a surrender of the premises and an acceptance of such surrender by the landlord.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge

REVERSED AND REMANDED.

*Robert L. McLaran* for plaintiff.

(1) By the common law a landlord may, at his option, regard the act of the tenant in holding over either as a trespass or as a renewal of the original lease. Quinette v. Carpenter, 35 Mo. 502; Finney v. St. Louis, 39 Mo. 178; Hunt v. Bailey, 39 Mo. 257; Ins. Co. v. Bank, 71 Mo. 58; Lewis v. Perry, 149 Mo. 257; Chaplin on Landlord and Tenant, p. 257; Taylor on Landlord and Tenant (9 Ed.), p. 29, sec. 22; 18 Am. and Eng. Ency. Law (2 Ed.), p. 405. (2) Mere acceptance of possession by a landlord is not sufficient to release a tenant from his obligation to pay rent. Livermore, etc., v. Eddy's Admr., 33 Mo. 551; Realty Co. v. Brecht, 109 Mo. App. 25. (3) Receiving the keys and using or permitting others to use the premises for the purpose of storing property therein would not release defendant from its obligation to pay rent. Buck v. Lewis, 46 Mo. App. 227.

*Franklin Ferriss* and *N. S. Brown* for respondent.

(1) Where a tenant remains in possession after the expiration of a lease with the consent of the landlord, and pending a treaty for a new lease, he becomes a tenant at will and liable only for the period occupied. Grant v. White, 42 Mo. 285; Haster v. Lange, 80 Mo. App. 234; Shephard v. Speer, 41 Ill. App. 209. (2) The giving up of possession by the tenant and its acceptance by the landlord, in pursuance of an agreement, will operate as a surrender by operation of law; and an actual and continued change of possession, by the mutual consent of the parties, will operate as a surrender by operation of law, though there was no express agreement of the parties that it should so operate. Duffy v. Day, 42 Mo. App. 638; Robertson v. Winslow Bros., 99 Mo. App. 546; Mathews v. Tobauer, 39 Mo. 115; Hurling v. Rale, 43 Mo. App. 234; Hutchinson v. Jones, 79 Mo. 496. (3) An abandonment of the premises by the tenant, and an entry into absolute possession by the landlord, will word a surrender by operation of law. 18 Am. and Eng. Ency. Law 364, and cases cited under III.

STATEMENT.—On December 22, 1902, defendant entered into an agreement in writing with plaintiff, whereby she leased to defendant Nos. 21-23 West Thirty-fourth street, New York City, for a term of nine months at a rental of three thousand dollars per annum, payable in advance in equal quarterly installments. The lease expired October 1, 1903. Defendant held over to December 31, 1903, and then vacated the premises. The rent was paid for the entire time defendant occupied the premises. The suit is brought on the theory that by holding over after the expiration of its term, the lease was renewed for a period of nine months from October 1, 1903, and is to recover for the quarter beginning

April 1, 1904, and ending on the thirtieth day of June following:

The answer set up the following special defense:

"And for further and separate defense defendant says that before the expiration of the agreement mentioned in plaintiff's petition, the defendant informed the plaintiff that it did not intend to renew the said agreement of tenancy; that thereupon the defendant and the plaintiff entered into negotiations for a new agreement for the renting of the aforesaid premises; that said negotiations covered many interviews and continued after the first day of October, 1903, and until the seventeenth day of November, 1903; that the defendant continued to remain in possession of the said premises after October 1, 1903, by and with the consent and permission of plaintiff; that on or about the seventeenth day of November, 1903, the parties hereto having failed to reach any agreement for the renting of said premises after the first day of October, 1903, the defendant informed the plaintiff that it would vacate said premises on the thirty-first day of December, 1903; that defendant did vacate said premises on said date and paid rental accepted by the plaintiff in full thereof; and defendant further says that plaintiff accepted the possession of said premises from the defendant, and entered into control and possession thereof on or about the thirty-first day of December, 1903."

On the pleadings the trial court correctly ruled, at common law, the pleadings raised the presumption that a new tenancy was created for a term of nine months from and after October 1, 1903, and that the burden was on defendant to prove its special defense. To establish its defense defendant offered John H. McGibbons, secretary of the international jury of awards of the Louisiana Purchase Exposition. McGibbons testified he occupied the premises as the agent of defendant during the term of the lease, and from October 1st to December

31, 1903; that he communicated with plaintiff's agent in the city of New York, in August, 1903, with a view of renting the premises from month to month after the expiration of the lease; that his communications with plaintiff's agent culminated in the preparation of a contract of lease for seven months from October 1, 1903, which was handed to him by said agent on September, 1903, to be forwarded to Governor Francis, president of the defendant company at St. Louis, to be by him rejected or accepted. The lease was not returned to McGibbons. In the month of September and October, plaintiff's agent called on McGibbons several times to inquire about the lease and to know whether or not it had been signed and returned. The agent testified that in anticipation the seven-months lease would be signed and returned, he permitted McGibbons to continue his occupancy of the premises during the month of October. McGibbons and plaintiff's agent both testified that Mc-Gibbons had no authority to renew the lease for any period. On vacating the premises on December 31st, McGibbons removed all the property of defendant therefrom and left the key at the office of plaintiff's agent. The agent testified the key was not delivered to him but was left at his office; that he did not accept its return to his office as a surrender of the possession of the premises.

One or two desks and some chairs were stored by some one (the evidence does not show by whom) in the premises immediately after they were vacated by Mc-Gibbons and remained there until about the first of July following. In respect to this furniture, the evidence of defendant tends to show it was the property of an ice company, a former tenant of the premises, on the same floor as those occupied by defendant; that the ice company had vacated prior to December 31st without paying its rent, and probably left the desk and chairs because it had not paid its rent. The premises were not re-let until July 1, 1904.

Verdict and judgment for defendant.

BLAND, P. J. (after stating the facts).—The only error assigned on the appeal is the giving of the follow-ing instruction on behalf of defendant:

"The court instructs the jury that if you believe and find from the evidence that the defendant removed from the premises mentioned in the evidence on the thirty-first day of December, 1903, and thereupon left the keys of said premises at the office of plaintiff's agent, and that the plaintiff or her agent then accepted the pos-session of said premises, then you should find for the defendant.

"And you are further instructed that if you find that the said keys were so left by defendant at the of-fice of plaintiff's agent, and thereafter plaintiff or her agent used, or permitted others to use, the said prem-ises for the purpose of storing property therein, during the period for which plaintiff now demands rent from defendant, such use would be an acceptance of the pos-session of said premises by plaintiff."

Both paragraphs of the instruction should be read together. When so read the instruction amounts to this: That if defendant vacated the premises December 31, 1903, and left the key at the office of plaintiff's agent, and the key was thereafter retained by the agent, and the premises used by plaintiff or by her permission, for the purpose of storing furniture therein, such use, in the circumstances, would be an acceptance of the surrender of the premises. McGibbons testified he notified plain-tiff's agent he would vacate and left the key at the agent's office. The key was retained without objection by the agent, and the undisputed evidence is, that imme-diately thereafter some furniture was stored in the prem-ises and remained there until July 1, 1904. Plaintiff's agent and her husband both testified the furniture was in the premises but denied that it was placed there at their instance or by their consent. Acceptance of an offer to

surrender leased premises is a matter of intention and generally a question of fact to be shown by the facts and circumstances. The facts and circumstances here recited tend to show an acceptance of the surrender of the premises by plaintiff's agent, but they are not conclusive, and the court erred in instructing the jury as a matter of law that they showed an acceptance or amounted to an acceptance. The court, therefore, erroneously de-decided this disputed fact by taking it away from the jury.

The judgment is reversed and the cause remanded. All concur.