[No. 13267. Department One. July 28, 1916.]

GEORGE A. BROWN, *Appellant*, v. HARRY T. HAYES *et al.*, *Respondents*.[1]

LANDLORD AND TENANT — REENTRY — SURRENDER — LIABILITY FOR RENT—WAIVER—EVIDENCE—SUFFICIENCY. A landlord may treat the lease as terminated by the tenants' breach and abandonment, and may reenter and sue for damages; and the giving of a notice to surrender or pay rent under the unlawful detainer statute is not a waiver of damages where, on the tenant's moving out, the landlord gave notice that he would recover possession and rent for what he could obtain and hold the lessees for the difference, and on accepting the key in response to notice to surrender, he refused to accept the lease as a surrender, and gave notice of intent to hold the lessees for damages.

Appeal from a judgment of the superior court for Clarke county, Back, J., entered May 26, 1915, dismissing an action on contract, upon granting a nonsuit, after a trial on the merits before a jury. Reversed.

[1]Reported in 159 Pac. 89.

*Miller & Wilkinson,* for appellant.

*James P. Stapleton,* for respondents.

ELLIS, J.—Action for damages on breach of a lease. · The evidence was, in substance, as follows: Plaintiff, lessee from the owner of a building for a term of years, on October 30, 1913, sublet a storeroom therein to defendants for a term of five years at a monthly rental of $91.66, due and payable on the first of each month, defendants also to pay their proportion of the expense of heating the building. Defendants went into possession and occupied the leased premises, plaintiff occupying an adjoining storeroom, both conducting mercantile establishments. In July, 1914, defendants sold their business to third parties, who removed the stock of goods to another location. On August 12, 1914, defendants paid their rent for that month, at that time and several times subsequently advising plaintiff that they would pay no more rent, repeatedly inviting him to sue, but so far as the evidence shows at no time offering to surrender possession or deliver up the keys.

Plaintiff at all times stated to defendants that, being bound on his own lease for the premises, he could not afford to release them from their contract, and finally advised them that he intended to secure possession of the storeroom, rent it for what it would bring and hold them for the difference. Accordingly, on September 1, 1914, pursuant to the unlawful detainer statute, he served upon defendants a notice that they were in default for the current month's rent and that they must either pay the rent within three days or surrender possession of the premises on pain of liability to an action for unlawful detainer. On the following evening, one of defendants called at plaintiff's store and handed him an envelope containing one of the duplicates of the lease, the key and a letter stating that in response to the notice, "We herewith surrender the premises." Plaintiff kept the key but refused to accept the lease as a surrender of the term, hand-

ing it back to the defendant who refused to take it. Plaintiff then stated that he would hold the lease for defendants and that they could have it at any time. Thereafter plaintiff leased the premises to other parties for a term equal to the remainder of defendants' term; and each month, on collecting the rent, sent defendants a bill for the difference between the rent collected and the monthly rental reserved in their lease. Plaintiff also offered proof of the rental value of the premises for the remainder of the term, and to show that it was less than the rent reserved in his lease to defendants. This evidence was excluded and the court thereupon granted a nonsuit. Plaintiff appeals.

Is the giving of notice by a landlord of an intention to forfeit a lease for nonpayment of rent, and a surrender by the tenant of the possession in response thereto necessarily equivalent to an unqualified surrender of the term? This is the ultimate question.

The general rule as to what constitutes a surrender of the term is stated as follows:

"A surrender may arise either from the express agreement of the parties, or by operation of law. And, whenever a surrender is implied from the acts of the parties, it is a surrender by operation of law. This inference may be drawn from anything which amounts to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume, possession of the premises." 2 Wood, Landlord & Tenant (2d ed.), p. 1174.

See, also, *Hart v. Pratt*, 19 Wash. 560, 53 Pac. 711. But it does not follow that every abandonment on the one hand and resumption on the other constitutes a surrender of the term, either express or by operation of law, so as to relieve either party from all liability for his own antecedent breach of the lease. It is just as well established as is the general rule that, when a tenant abandons the premises without just cause and refuses to pay rent, the landlord may either treat the term as still subsisting and sue for the installments of

rent reserved as they accrue; or, treating the lease as terminated by the tenant's breach, reenter and sue for damages for the breach. Jones, Landlord & Tenant, § 549; *Bradbury v. Higginson*, 162 Cal. 602, 123 Pac. 797. If the landlord pursue the latter course, his damages are measured, not by the amount of the rent reserved, but by the difference between that amount and the rental value of the premises to the end of the term. *Bradbury v. Higginson, supra; Oldfield v. Angeles Brewing Co.*, 62 Wash. 260, 113 Pac. 630, 35 L. R. A. (N. S.) 426.

The evidence shows that such was at least the purpose of the appellant here. It can hardly be questioned that, had he reentered under all the antecedent circumstances here presented save his notice to pay rent or surrender, he could have maintained this action for damages. By the giving of that notice did he so acquiesce in the respondents' desire to abrogate the lease and avoid the term as to estop him from claiming damages? We think not. The action of unlawful detainer is an exclusive legal substitute for the common law right of personal reentry for breach. *Spencer v. Commercial Co.*, 30 Wash. 520, 71 Pac. 53. It follows that a reentry by that action has no different results from those implied from a reentry for breach without the necessity of action. This phase of the case here cannot be distinguished from that presented in *Barrett v. Monro*, 69 Wash. 229, 124 Pac. 369, 40 L. R. A. (N. S.) 763. There the reentry was by notice and action in unlawful detainer. The tenant had made a deposit under the terms of the lease for liquidated damages in case of breach. We held that the reentry for default in payment of rent was not a waiver of the right to the liquidated damages. Ordinarily a surrender on the one hand and an acceptance of possession on the other, if unexplained, constitutes a surrender of the term by operation of law, but if it appear from all the circumstances that the landlord resumed possession for the communicated purpose of caring for abandoned premises and re-renting them in order to minimize

his damages no such implication arises. *Brown v. Cairns*, 107 Iowa 727, 77 N. W. 478.

Such was the professed purpose of the appellant here, and the fact that he gave the notice as the first step toward securing peaceable possession does not necessarily create the implication. That implication must arise, if at all, from other acts inconsistent with the professed purpose. We fail to find them here. True, he accepted the key and resumed possession, but at the same time he refused to accept the lease as a surrender of the term. His attitude then clearly carried the information which he had repeatedly given defendants that he intended to hold them in damages for their breach of the lease. Under these circumstances, his acceptance of the key was no waiver of that right.

"Too much importance should not be attached to a delivery of the keys to the landlord and his attempt to relet the premises. The legal effect of these acts depends largely on the intent with which the keys were delivered and for what purpose they were accepted. The landlord's words at the time he accepted the keys are good evidence on this subject. There is no surrender where landlord refuses to accept the keys except on condition that he is to find another tenant, if possible, and hold the lessee responsible for any deficiency in the rent." Jones, Landlord and Tenant, § 549.

See, also, *Lucy v. Wilkins*, 33 Minn. 441, 23 N. W. 861; *Biggs v. Stueler*, 93 Md. 100, 48 Atl. 727; *Dorrance v. Bonesteel*, 61 App. Div. 129, 64 N. Y. Supp. 307; *Martin v. Stearns*, 52 Iowa 345, 3 N. W. 92.

On the motion for a nonsuit the appellant was entitled to the benefit of every favorable inference to be drawn from his evidence. The question was one of intention and we are clear that the evidence presented a case for the jury. *Sessinghaus v. Knocke*, 127 Mo. App. 300, 105 S. W. 283; *Leggett v. Louisiana Purchase Exposition Co.*, 121 Mo. App. 70, 97 S. W. 976; *Stewart v. Sprague*, 71 Mich. 50, 38 N. W. 673; *Hays v. Goldman*, 71 Ark. 251, 72 S. W. 563.

The court erred in refusing to admit evidence of the rental value of the premises for the unexpired term and in granting the nonsuit.

Judgment reversed and cause remanded for trial.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.