FILED
COURT OF APPEALS
DIVISION II

2014 MAY 13 AM 9: 13

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| OLD CITY HALL LLC, a Washington corporation, <br><br> Appellant, <br><br> v. <br><br> PIERCE COUNTY AIDS FOUNDATION, a Washington non-profit corporation, <br><br> And <br><br> PEGGY FRAYCHINEAUD GROSS, Attorney at Law, a Washington sole proprietorship, <br><br> Respondents. | No. 43810-1-II <br><br><br> ORDER PUBLISHING OPINION |

This matter was heard in oral argument on December 3, 2013. An unpublished opinion was filed on February 25, 2014. Respondent Pierce County Aids Foundation filed a motion to publish opinion. After review of the motion and the responses received, it is hereby

ORDERED that the final paragraph, which reads as follows, shall be deleted: "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." It is further

ORDERED that the opinion will be published.

No. 43810-1-II

IT IS SO ORDERED.

DATED this 13TH day of MAY , 2014.

_____
BJORGEN, J.

We concur:

_____
JOHANSON, A.C.J.

_____
MAXA, J.

2

FILED
COURT OF APPEALS
DIVISION II

2014 FEB 25 AM 9: 47

WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| OLD CITY HALL LLC, a Washington corporation, | No. 43810-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| PIERCE COUNTY AIDS FOUNDATION, a Washington non-profit corporation, | |
| And | |
| PEGGY FRAYCHINEAUD GROSS, Attorney at Law, a Washington sole proprietorship, | |
| Respondents. | |

BJORGEN, J. — After years of complaints to their landlord, Old City Hall LLC, about declining conditions in their building, the Pierce County AIDS[1] Foundation (Foundation) and Peggy Gross terminated their leases and moved out. When Old City Hall sued for rent, both Gross and the Foundation asserted constructive eviction as a defense and moved for summary judgment. The trial court granted Gross and the Foundation partial summary judgment, ruling that Old City Hall's constructive eviction relieved them of any obligation to pay rent after the date they vacated the premises. Old City Hall appeals, claiming that the trial court improperly denied a continuance so that it could depose a witness and improperly granted the Foundation and Gross summary judgment on the constructive eviction issue. We affirm the trial court in all respects.

---

[1] Acquired Immune Deficiency Syndrome.

No. 43810-1-II

## FACTS

Old City Hall bought Tacoma's historic city hall building in 2005. It took the property subject to existing leases, but planned to convert the building from commercial to residential use so that it could sell spaces in the building as luxury condominiums. To make this conversion, Old City Hall needed the building's tenants to leave; it attempted to speed this process along by offering the tenants financial incentives to voluntarily terminate their leases and relocate. Many tenants accepted the offers. The Foundation and Gross were among those that did not.

The tenants who remained noticed that the building began falling into neglect and disrepair. Janitorial services, which the lease required Old City Hall to provide, declined. Trash piled up in the common areas, and human feces from unauthorized residents began appearing in areas of the building. The building's security regime began to fail. Tenants and their visitors noticed an increase in criminal activity and came to feel unsafe in the building. The remaining tenants suffered break-ins. Old City Hall eventually decided to remedy these problems by locking the building's main door on Commerce Street. This required the Foundation's clients to walk up and down a steep hillside to another entrance, despite the fact that this was physically very difficult for many of them. The building's heating and cooling units also repeatedly failed, and the building became unbearably cold in the winter and intolerably hot in the summer. Finally, despite the lease's contractual obligation that it do so, Old City Hall frequently failed to pay the building's utility bills, leaving the tenants facing service shutoffs. The Foundation and Gross complained to Old City Hall's property management company, Stratford Management Company LLC, about these issues, but little, if anything changed.

2

Gross had come close to moving out when Old City Hall initially attempted to move its tenants out of the building, even spending $23,000 to hold space in another building. That plan, though, fell through when she and Old City Hall could not agree on a deal to terminate her lease. In 2007 her lease was ending, and she needed to provide six months' notice if she planned to renew. Concluding she had no viable alternative to her current space, Gross gave the notice and renewed her lease in reliance on Stratford's assurances that conditions would improve. After April 2008, a clerical error caused Gross to stop paying rent. When Old City Hall called this to her attention, Gross announced that she considered herself constructively evicted, planned on leaving the building by October 2008, and informed Old City Hall that she would use the back rent to relocate.

By 2009 the Foundation had also decided to leave the building because of the deteriorating conditions. In August 2009 the Foundation filed suit against Stratford, seeking a declaratory judgment that it owed no further rent because of constructive eviction. Stratford never appeared, and the Foundation received a default judgment in September. With this judgment in hand, the Foundation moved forward on plans to secure an alternate space and, in November 2009, announced that it was vacating the building. Old City Hall responded by asking the trial court to vacate the declaratory judgment because the Foundation had improperly sued Stratford, the property manager, rather than it. The trial court agreed that the Foundation had failed to name a necessary party and vacated its earlier order. Nonetheless, the Foundation proceeded with its plans and vacated the building in order to occupy premises it had leased in reliance on the default judgment.

3

No. 43810-1-II

In 2010, after both Gross and the Foundation vacated the building, the city of Tacoma declared it derelict. This declaration, by law, forbade any occupation of the building until Old City Hall remedied defects cited by the City.

In early 2010 Old City Hall filed suit against Gross and the Foundation for breach of the lease. Old City Hall asked the trial court to accelerate all rents due under the lease and award it nearly $500,000 in damages between the defendants. Gross and the Foundation both answered the rent action by claiming the affirmative defense of constructive eviction and counterclaimed for damages caused by Old City Hall's breach of its duties under the lease.

Gross and the Foundation moved for summary judgment on the issue of liability for rent based on the constructive eviction defense. Old City Hall responded by asking the trial court to continue the matter until it could depose the state representative that had headed the Foundation in 2005, claiming that it needed the information from this witness to properly argue its theory of waiver. In the alternative, Old City Hall asked the trial court to deny Gross and the Foundation's summary judgment because material issues of fact remained as to whether it had constructively evicted Gross and the Foundation and whether they had waived their right to the defense of constructive eviction by failing to vacate the building within a reasonable time from the appearance of the conditions they claimed drove them out.

The trial court denied the motion for a continuance and granted partial summary judgment to Gross and the Foundation. The trial court denied the request for a continuance because the Foundation's former head did not have materially relevant information to the constructive eviction and waiver issues. Recognizing that Gross and the Foundation offered unrebutted evidence about the conditions inside the building, the trial court concluded that

4

No. 43810-1-II

reasonable minds could only conclude that Old City Hall's refusal to remedy declining conditions in the building made it untenantable. Applying our decision in *Aro Glass & Upholstery Co. v. Munson-Smith Motors, Inc.*, 12 Wn. App. 6, 528 P.3d 502 (1974), the trial court determined that Gross and the Foundation had not waived their claims, because they had continued to protest the building's deficient conditions. The trial court therefore granted Gross and the Foundation summary judgment on liability for any rent owed after they vacated their leaseholds on September 23, 2008, and December 30, 2009, respectively. However, recognizing that constructive eviction cannot eliminate liability for rent accrued before the tenant vacates the leasehold, the trial court declined to grant summary judgment for liability on any rent owed by Gross or the Foundation before they vacated the building. The parties later entered stipulated agreements on damages on the remaining claims, contingent upon our disposition of any appeal.

Old City Hall now appeals the trial court's order granting summary judgment to Gross and the Foundation and the trial court's denial of its motion for continuance.

ANALYSIS

I. SUMMARY JUDGMENT

Old City Hall appeals the trial court's decision to grant Gross and the Foundation partial summary judgment on the issue of liability for rent accruing after they vacated the property. Old City Hall argues that summary judgment was inappropriate because two questions of material fact remained: (1) whether it constructively evicted Gross and the Foundation and (2) whether Gross and the Foundation waived their constructive eviction defense by failing to vacate the building within a reasonable period of time after the objectionable conditions arose.

5

No. 43810-1-II

We review de novo a trial court's decision to grant summary judgment, engaging in the same inquiry as the trial court. *Staples v. Allstate Ins. Co.*, 176 Wn.2d 404, 410, 295 P.3d 201 (2013). For purposes of summary judgment, we view all facts and any reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Staples*, 176 Wn.2d at 410. We affirm a grant of summary judgment where no material issue of fact exists and the moving party is entitled to judgment as a matter of law. *Staples*, 176 Wn.2d at 410; *see* CR 56.

A constructive eviction involves "'an intentional or injurious interference by the landlord or those acting under his authority'" that "'deprives the tenant of the means or the power of beneficial enjoyment of the demised premises or any part thereof, or materially impairs such beneficial enjoyment.'" *Aro Glass*, 12 Wn. App. at 8 (quoting *Myers v. W. Farmers Ass'n*, 75 Wn.2d 133, 134-35, 449 P.2d 104 (1969)). A constructive eviction prospectively releases the tenant from the obligation to pay rent, so long as the tenant abandons the leasehold in response to the constructive eviction. *Buerkli v. Alderwood Farms*, 168 Wash. 330, 334-35, 11 P.2d 958 (1932).[2] Where the suit concerns a commercial lease, "Washington['s] courts have been quite ready to find constructive evictions in cases in which the landlord seriously interfered with the tenant's conduct of business on the premises." 17 STOEBUCK & WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.32, at 352 (2d ed. 2004) (collecting cases where constructive eviction occurred because of reasons as diverse as the landlord's allowing puddles

---

[2] Old City Hall's citation to *Draper Machine Works, Inc. v. Hagberg*, 34 Wn. App. 483, 486, 663 P.2d 141 (1983) is inapposite for this reason. The tenant in that case sought to escape liability for rent accrued while retaining possession of the property. *Draper Mach. Works*, 34 Wn. App. at 486. Here, the trial court granted summary judgment to Gross and the Foundation as to their liability only for rents accrued after they were constructively evicted, meaning after they abandoned the leased premises.

6

No. 43810-1-II

to form and remain on the commercial premises and a landlord's insulting his tenant in front of clients).

A.    Reasonable minds could only conclude that Old City Hall constructively evicted
      Gross and the Foundation; summary judgment was appropriate in this case.

Old City Hall first claims that the trial court erred in granting summary judgment because material issues of fact exist. We disagree.

At the outset, we note that no material issue of fact exists regarding the neglected state of the building or its effect on tenants. Gross and the Foundation offered numerous declarations and documentary evidence about the problems occurring during their leases. Old City Hall makes no effort to contest these descriptions of conditions inside the building. *See* Clerk's Papers (CP) at 673-701 (Old City Hall's first declaration in opposition to summary judgment, which contains a transcript of Gross's deposition concerning waiver and also contains an e-mail chain related to the issue of deposing the former head of the Foundation; none of the evidence submitted discussed the conditions in the building), CP 714-36 (Old City Hall's second declaration in opposition to summary judgment which offered evidence concerning only the issue of waiver).

Nonetheless, Old City Hall claims that material issues of fact remain because a fact finder must determine whether these conditions amounted to a constructive eviction. We have indeed noted that whether a constructive eviction has occurred is "'generally a question of fact to be determined by the trier of facts.'" *Aro Glass*, 12 Wn. App. at 8 (quoting *Myers*, 75 Wn.2d at 134-35). But where reasonable minds can reach only one conclusion, resolution of a question by a fact finder is unnecessary and courts may decide the question as one of law. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 924, 296 P.3d 860 (2013). Thus, where reasonable minds

7

could reach only one conclusion, the court may grant summary judgment, even where the issue normally requires resolution by a fact finder. *Lakey*, 176 Wn.2d at 924; *Staples*, 176 Wn.2d at 410.

In *Lakey*, our Supreme Court affirmed a grant of summary judgment in the related context of nuisance law using the principle that courts may sometimes decide factual questions as questions of law. 176 Wn.2d at 922-25. Several property owners sued a utility company over the expansion of one of its substations, claiming that the electromagnetic fields generated by the expanded substation constituted a nuisance. This claim required them to prove that their fears of the emissions caused a "'substantial and unreasonable interference with the use and enjoyment of'" their property. *Lakey*, 176 Wn.2d at 914-17, 922-25 (quoting *Bodin v. City of Stanwood*, 79 Wn. App. 313, 318 n.2, 901 P.2d 1065 (1995)). While it noted that reasonableness is normally a question of fact for the jury, the Supreme Court nevertheless affirmed the trial court's summary judgment order after holding that no reasonable juror could find the utility's conduct unreasonable. *Lakey*, 176 Wn.2d at 924-25.

Similar to the Supreme Court's disposition of the appeal in *Lakey*, we affirm the trial court's summary judgment order on the grounds that no reasonable fact finder could conclude that Old City Hall had not constructively evicted Gross and the Foundation. Undisputed evidence in the record demonstrates that conditions in the building had become unsanitary, unbearable, unworkable, and unsafe. *See, e.g.*, CP at 298 (trash piling up and cleaning services not performed because Old City Hall failed to pay the bill between October 2008 and April 2009); CP at 577 (feces found in the common areas March 2008); CP at 570-80 (failure to

address concerns about the HVAC[3] units in the building led to intolerable temperatures in the summer and winter); CP at 367 (same); CP at 370 (same); CP at 580 (Gross's clients not comfortable coming to her offices); CP at 298-99 (locking of the Commerce Street entrance made it extremely difficult for the Foundation's clients to come to its offices); CP at 366 (Foundation employees felt unsafe in building because of the lack of security and the unauthorized residents); CP at 369 (safety concerns due to multiple burglaries in the building); CP at 365 (Old City Hall's failure to pay utility bills on time interfered with the Foundation's ability to carry on its business); CP at 410 (same).

Given the undisputed evidence about the state of the building, a reasonable fact finder could only conclude that Old City Hall deprived Gross and the Foundation "'of the means or the power of beneficial enjoyment of the demised premises'" or that it materially impaired such beneficial enjoyment. *Aro Glass*, 12 Wn. App. at 8 (quoting *Myers*, 75 Wn.2d at 134-35).[4] With that, no material issues of fact remain and Gross and the Foundation are entitled to judgment as a matter of law.[5]

---

[3] Heating Ventilation and Air Conditioning.

[4] This case is unusual in that there is objective evidence of a constructive eviction. The City forbad occupation of the building after both tenants moved out. Evidence in the record indicates that the conditions leading the City to declare the building derelict were substantially similar to those present when Gross determined to move out.

[5] We note that resolving this factual issue as a matter of law may be conceptually indistinguishable from holding that the undisputed evidence of the site conditions and their effect shows constructive eviction as a matter of law under CR 56. Whichever lens is used, summary judgment was appropriate.

No. 43810-1-II

B.    Waiver

Alternatively, Old City Hall asks us to find summary judgment on liability inappropriate because material issues of fact remain about whether the Foundation and Gross waived their claims to constructive eviction.[6] Old City Hall rests it argument on cases interpreting the common law of constructive eviction and waiver in other states. While Old City Hall faithfully describes the holdings of those cases, they are irrelevant in the face of controlling Washington precedent.

Under Washington law, a tenant may waive the right to raise the defense of constructive eviction in two ways. First, because the tenant must provide the landlord an opportunity to remedy any problems, a tenant waives the defense by terminating the lease before providing notice of defective conditions. *See, e.g., Pague v. Petroleum Prods., Inc.*, 77 Wn.2d 219, 221, 461 P.2d 317 (1969); *Erickson v. Elliot*, 177 Wash. 229, 233, 31 P.2d 506 (1934); *Cal. Bldg. Co. v. Drury*, 103 Wash. 577, 581-82, 175 P. 302 (1918); *Aro Glass*, 12 Wn. App. at 10-11. Second, a tenant who acquiesces to the defective conditions by remaining in the leasehold without

---

[6] The Foundation and Gross both claim that under CR 8(c) Old City Hall's failure to plead waiver in its reply precludes it from arguing the issue before us. Old City Hall's response raised the issue as one of equitable estoppel instead of waiver, but the substance of one of the defenses in its reply, that the Foundation acquiesced by remaining in the building despite the conditions it claimed led to its constructive eviction, is the same as its waiver claim. *See, e.g.,* CP at 91 ("[The Foundation] is equitably estopped from asserting that the terms of its lease were breached by features of the building or by conduct that was substantially the same as such features and conduct that existed at the time [the Foundation] declined to relocate."). The Supreme Court has recently admonished that we should resolve issues on the merits instead of formalistically rejecting claims based on issue preservation claims. *See Washburn v. City of Federal Way*, 178 Wn.2d 732, 746-52, 310 P.3d 1275 (2013). Old City Hall raised the issue in its reply, the tenants had notice of the issue, and we address it on the merits.

10

complaint also waives the defense. *Cal. Bldg. Co.*, 103 Wash. at 582; *Aro Glass*, 12 Wn. App. at 10-11.

In *Aro Glass* the tenant leased premises for a used car lot. 12 Wn. App. at 7. The lease required the landlord to remedy the lot's propensity to allow large puddles of water to form. *Aro Glass*, 12 Wn. App. at 7. The landlord made several attempts to fix the problem, including repaving the lot and creating trenches to channel the water off of the lot. *Aro Glass*, 12 Wn. App. at 7-8. These fixes failed, and the tenant continually demanded that the landlord make good its obligations to eliminate the puddles. *Aro Glass*, 12 Wn. App. at 7. Eventually, the tenant informed the landlord that it would begin withholding rent and, if the landlord did not fix the puddle problem within a month, it would terminate the lease and vacate the premises. *Aro Glass*, 12 Wn. App. at 7-8. The landlord took no action, and the tenant terminated the lease. *Aro Glass*, 12 Wn. App. at 7-8.

The landlord sued for rent, and the tenant defended on the grounds that the landlord had constructively evicted it. *Aro Glass*, 12 Wn. App. at 8. In response, the landlord argued that the tenant had waived constructive eviction as a defense. *Aro Glass*, 12 Wn. App. at 10-11. We rejected this claim after finding that the tenant had not engaged in either type of behavior that waived a constructive eviction claim. The tenant had alerted the landlord to the deficient conditions with its complaints, and its complaints showed that it had not acquiesced in the deficient conditions. *Aro Glass*, 12 Wn. App. at 10-11.

Just as the tenant did in *Aro Glass*, the Foundation and Gross "continually pursued [their] requests and demands that corrective action be taken" regarding the neglect of the building. *See, e.g.*, CP at 122 (complaints about lack of sanitation, including blood and feces stains in the

common bathrooms), CP at 124 (complaints about failure to properly heat the building), CP at 130-32 (complaints about sanitation, lack of security, and criminal activity in the building), CP at 148-49 (complaints about failure to heat the building and thefts), CP at 151-52 (complaints about failure to heat the building), CP at 154-55 (same), CP at 160 (same), CP at 162-69 (complaints about failure to heat the building, poor security, and sanitary conditions in the bathroom), CP at 176 (complaints about water leaks and failure to properly cool building), CP at 200-02 (complaints about security and sanitation conditions), CP at 204 (complaints about security), CP at 294-303 (repeated complaints about heating and cooling the building, difficulties arising from Old City Hall's failure to pay the utilities, sanitation, and security conditions), CP at 315-21 (same), and CP at 364-73 (complaints about heating and cooling, security, and difficulty for the Foundation's clients due to the locking of the Commerce Street door). With these complaints, neither Gross nor the Foundation waived their constructive eviction claim under either waiver theory Washington law recognizes. The complaints certainly alerted Old City Hall, or its agent Stratford, to the deficient conditions so that Old City Hall could remedy them. The complaints also demonstrated that neither Gross nor the Foundation acquiesced in the deficient conditions by accepting them without complaint.

Public policy considerations also require us to reject Old City Hall's theory of waiver. Our Supreme Court has recognized that landlords may have incentives to engage in wrongful behavior in order to force tenants to vacate so that the landlord can put the leasehold to another use more beneficial to it.[7] *See, e.g., Cherberg v. Peoples Nat'l Bank of Wash.*, 88 Wn.2d 595,

---

[7] The Foundation claims this is just such a case. Because we review a summary judgment decision here, we must view the facts and the inferences arising from those facts in the light most favorable to the nonmoving party, Old City Hall. Viewed in that light, we cannot say that this

564 P.2d 1137 (1977). In these cases, the neglect of the premises is an obvious tool the landlord might use to force the tenant to break the lease. It would contradict public policy to allow the landlord to make the leasehold untenantable and gamble on the possibility that it would suffer no consequences for its actions if the tenant fails to quickly give up, break the lease, and move out.

Finally, Old City Hall claims that the trial court failed to make adequate findings of fact to support its conclusion that a constructive eviction occurred or that it occurred on September 23, 2008 for Gross and on December 30, 2009 for the Foundation. Findings of fact are superfluous on appeal from an order of summary judgment because of the de novo nature of our review. *Shoulberg v. Pub. Util. Dist. No. 1 of Jefferson County*, 169 Wn. App. 173, 177 n.1, 280 P.3d 491, *review denied*, 175 Wn.2d 1024, 291 P.3d 253 (2012). Instead, we consider whether material facts are "uncontroverted or conceded at summary judgment." *Shoulberg*, 169 Wn. App. at 177 n.1. Thus, the court's failure to make specific findings does not imperil its order on summary judgment.

To the extent Old City Hall is claiming that a material issue of fact remains, its position also fails. Essentially, it argues that conditions in the building evicted Gross and the Foundation at some point before they actually quit the building and that the trial court needed to determine that date. However, in *Buerkli*, 168 Wash. at 334-35, the court held, "In order to claim and assert a constructive eviction as a defense to an action for rent, the tenant must in fact vacate the premises." The trial court recognized this by terminating the duty to pay rent on the dates that Gross and the Foundation moved out. No evidence in the record controverts the dates Gross and the Foundation vacated the building. Summary judgment that Gross and the Foundation had no

was a campaign to drive the tenants out of the building, but may have just been a lessor ill-equipped way to deal with the challenges inherent in owning a historic building.

liability to pay rent after September 23, 2008, and December 30, 2009, respectively, was therefore appropriate.

## II. THE MOTION TO CONTINUE

Old City Hall also appeals the trial court's decision to deny it a continuance to depose the Foundation's former head. Old City Hall sought the deposition in order to establish the Foundation had experienced the objectionable conditions underlying its constructive eviction claim as far back as 2005 and had, therefore, waived the claim.

CR 56(f) allows a party to move for a continuance so that it may gather evidence relevant to a summary judgment proceeding. We review a trial court's decision to deny a motion for a continuance on these grounds for an abuse of discretion. *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989). A trial court does not abuse its discretion if it denies a motion for a continuance because

> (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.

*Turner*, 54 Wn. App. at 693. As shown above, Old City Hall's waiver theory is incompatible with Washington precedent. Thus, the evidence sought from the former head would not raise or bear on a material issue of fact. The trial court therefore did not abuse its discretion in denying the continuance.

## III. GROSS AND FOUNDATION SHOULD RECEIVE ATTORNEY FEES

Both Gross and the Foundation request attorney fees for the appeal. We may award attorney fees on appeal if "allowed by statute, rule, or contract and the request is made pursuant to RAP 18.1(a)." *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003).

14

No. 43810-1-II

Both Gross's and the Foundation's leases contain a provision permitting a prevailing party to recover reasonable attorney fees in a suit arising out of the lease. These provisions cover fees incurred during "trial and on appeal." CP at 19, 41.

Old City Hall's lawsuit and this appeal arose out of the lease, since Old City Hall was seeking the payment of back rent under it. Gross and the Foundation have prevailed in this appeal. Therefore, we award them attorney fees for reasonable expenses incurred for this appeal.

CONCLUSION

We hold that reasonable minds could reach only the conclusion that Old City Hall constructively evicted Gross and the Foundation, and we hold that Gross and the Foundation did not waive the defense of constructive eviction. Accordingly, we affirm the trial court's decision to grant summary judgment to Gross and the Foundation, and we award them attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

JOHANSON, A.C.J.

MAXA, J.

15